IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JANICE LYNN SANCHEZ, as Personal
Representative of the ESTATE OF
MARLYSA SANCHEZ and Next Friend
of E.T., a minor child,

        Plaintiff,

v.                                        1:20-cv-00550-LF-SCY

ROBERT RUSHTON, in his individual
and official capacities,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO STAY PROCEEDINGS**

      THIS MATTER comes before the Court on defendant Robert Rushton's Motion to Stay

Parallel Proceedings, filed August 12, 2020.  Doc. 7.  Plaintiff Janice Lynn Sanchez filed her

response on August 31, 2020.  Doc. 9.  Mr. Rushton filed his reply and a notice of the

completion of briefing on September 14, 2020.  Docs. 10, 11.  Ms. Sanchez filed a motion for a

hearing on the motion but subsequently withdrew that motion.  Docs. 14, 17.  Accordingly, the

Court will decide the motion on the briefs.  D.N.M.LR-Civ. 7.6(a) ("A motion will be decided on

the briefs unless the Court sets oral argument.").  Having read the submissions of the parties and

the relevant law, the Court finds that the motion is not well-taken and will DENY it.

**I.**       **Background Facts and Procedural Posture**

      This case arises from an encounter between defendant police officer Robert Rushton and

plaintiff's decedent Marlysa Sanchez on November 5, 2017.  Ms. Sanchez initially brought

claims against Officer Rushton and the Village of Ruidoso[1] on April 19, 2019, in the Twelfth

Judicial District Court of New Mexico.  Doc. 7 at 14–28.  The case progressed through discovery

in state court and was scheduled for trial in September of 2020.  Doc. 7 at 3.  In April of 2020,

the state court vacated the September trial setting.  *Id*.  More than a year after initially filing the

state court case, on June 6, 2020, Ms. Sanchez filed suit against Officer Rushton in his individual

and official capacities in this Court.  Doc. 1.  The state and the federal lawsuits are both based on

the events that took place on November 5, 2017, in which Officer Rushton shot and killed

Marlysa Sanchez.  *Compare* Doc. 1 *with* Doc. 7 at 14–28.  The allegations contained in the

complaints in the state and federal court are nearly identical.  *Id*.  The key difference between the

two is that the state case asserts state tort claims under the New Mexico Tort Claims Act

("NMTCA"), Doc. 7 at 26–28, whereas the federal case brings claims for excessive force under

the Fourth Amendment of the United States Constitution, Doc. 1 at 16–18. [2]

In his motion to stay proceedings, Officer Rushton contends that the state and federal

cases are parallel and, therefore, subject to abstention under the *Colorado River*[3] doctrine.

Plaintiff contends that the cases are not parallel, and even if the Court finds that the two cases are

parallel, it should refrain from staying this case based on *Colorado River*.  The Court finds that

the New Mexico state court case and this case are not parallel, and therefore it will not stay this

matter under the *Colorado River* doctrine.

---

[1] The Village of Ruidoso was not named as a defendant in this Court.  *See* Doc. 1.

[2] In his motion, Officer Rushton argues that the state case also asserted a federal constitutional
claim.  *See* Doc. 7 at 1–2.  Ms. Sanchez expressly disavows that her state complaint raises any
federal constitutional claims.  Doc. 9 at 3–5.  The Court agrees that plaintiff's state complaint
only alleges state claims and accepts plaintiff's representation that her state complaint does not
assert any federal constitutional claim.

[3] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

## II.   <u>Discussion</u>

### A.  Abstention Under *Colorado River*

"Federal courts have the power to refrain from hearing, among other things, cases which are duplicative of a pending state proceeding." *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013) (internal quotation and citation omitted).  The *Colorado River* doctrine applies to "situations involving the contemporaneous exercise of concurrent jurisdictions by state and federal courts." *Colorado River*, 424 U.S. at 817.  In *Colorado River*, the Supreme Court announced an abstention doctrine under which a federal court, for reasons of "wise judicial administration," may stay or dismiss a federal suit pending resolution of a parallel state court proceeding. *Id.* at 817.  The *Colorado River* doctrine is a judicially created doctrine of efficiency that was designed to "fill a gap in the federal courts' existing inventory of abstention principles." *Id.* at 817–18 (distinguishing between dismissal under abstention doctrines and dismissal "for reasons of wise judicial administration"). Avoiding duplicative litigation is at the core of the *Colorado River* doctrine. *D.A. Osguthorpe Family P'ship*, 705 F.3d at 1233.  The goal of the *Colorado River* doctrine is "to preserve judicial resources." *Id.*  "The doctrine springs from judicial economy concerns that may justify deferral of a federal case when pending state litigation will resolve the issues in the federal case." *THI of New Mexico at Hobbs Ctr., LLC v. Patton*, 851 F. Supp. 2d 1281, 1288 (D.N.M. 2011). Declining to exercise jurisdiction based on the *Colorado River* doctrine, however, is appropriate only in "exceptional" circumstances. *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). Any doubt in the application of the factors "should be resolved in favor of exercising federal jurisdiction." *Id.* at 1082.

To determine whether to stay or dismiss a federal case under the *Colorado River* doctrine, the Court must conduct a two-step process.  First, the Court must determine whether the state and federal cases are "parallel."  *Fox*, 16 F3d at 1081.  Once the court determines that the state and federal proceedings are parallel, it then determines whether it should defer to the state court proceeding based on the circumstances.  *Id*. at 1082.  "[T]he decision whether to defer to the state courts is necessarily left to the discretion of the district court in the first instance."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).  "A court has no discretion to dismiss rather than to stay an action if the plaintiff has set forth claims for monetary damages that cannot be redressed in state court."  *Allen v. Bd. of Educ., Unified Sch. Dist*. 436, 68 F.3d 401, 403 (10th Cir. 1995).  Because Ms. Sanchez has set forth claims for monetary damages that cannot be redressed in state court—such as attorney's fees and punitive damages, *see* Doc. 1 at 16, 18—the Court does not have the discretion to dismiss the case but will decide whether this case should be stayed pending resolution of the state court proceedings.

### B.  The State and Federal Proceedings are Not Parallel.

"Suits are parallel if substantially the same parties litigate substantially the same issues in different forums."  *Fox*, 16 F.3d at 1081.  The proceedings are substantially similar where "the parallel state-court action is an adequate vehicle for the complete and prompt resolution of the issue between the parties."  *THI of New Mexico at Hobbs Ctr., LLC v. Patton*, 851 F. Supp. 2d 1281, 1288–89 (D.N.M. 2011).  The *Colorado River* doctrine "necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses."  *Fox,* 16 F.3d at 1081–82.  The Court should not engage in considering how the state proceedings could have been brought in theory but must examine the state proceedings as they actually exist to determine whether they are parallel to the federal proceeding.  *Id*. at 1081.  Moreover, the Court need not conclude that there is "formal symmetry

between the two actions." *Tyrer v. City of South Beloit*, 456 F.3d 744, 752 (7th Cir. 2006).

Rather, the proceedings are sufficiently parallel if "the suits involve the same parties, arise out of

the same facts and raise similar factual and legal issues." *Id.*; *see also Vulcan Chem Techs., Inc.*

*v. Barker*, 297 F.3d 332, 341 (4th Cir. 2002) (suits are similar when the federal court is required

to "consider . . . the same evidence and arguments" as the state court would have to consider);

*Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1329–30 (11th Cir. 2004)

(rejecting argument that *Colorado River* "abstention" is permissible only when the relevant

federal and state cases "share identical parties, issues, and requests for relief").

> 1.  The Parties are Substantially Similar.

The parties in the state and federal cases are substantially similar.  In state court, Ms.

Sanchez sued the Village of Ruidoso and Robert Rushton in his individual and official

capacities.  Doc. 7 at 1.  In the federal case, Ms. Sanchez does not name the Village and names

only Officer Rushton in his individual and official capacities.  Officer Rushton points out that

"[a] claim brought against Defendant Rushton in his official capacity is treated the same as a suit

brought against a governmental entity"; thus, the parties in the state and federal suits are the

same.  Doc. 7 at 5 n.2 (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Lumen Const., Inc.*

*v. Brant Const. Co.*, *Inc.*, 780 F.2d 691, 695 (7th Cir. 1985)).  Ms. Sanchez does not dispute that

a claim against Officer Rushton in his official capacity is treated the same as a suit against the

Village of Ruidoso.  Further, even if the parties are slightly different, that "does not destroy the

parallel nature of the cases.  If it did, parties could avoid the doctrine of *Colorado River* by the

simple expedient of naming additional parties." *Interstate Material Corp. v. City of Chicago*,

847 F.2d 1285, 1288 (7th Cir. 1988).  The Court, therefore, finds that the parties are substantially similar.

        2.  <u>The Issues are not Substantially Similar</u>.

        The chief dispute in this case is whether the issues are substantially similar.  In her state court complaint, Ms. Sanchez asserts claims for wrongful death/battery and loss of consortium pursuant to the NMTCA, N.M. Stat. Ann. § 41-4-12 (1978).[4]  Doc. 7 at 26–27.  In her federal court complaint, Ms. Sanchez asserts claims for excessive force under the Fourth Amendment to the United States Constitution and loss of consortium.  Doc. 1 at 16–17.  The parties do not dispute that the loss of consortium claim is substantially similar in both cases.  Instead, they dispute whether the battery claim under the NMTCA is substantially similar to the excessive force claim under the Fourth Amendment.  These claims are not substantially similar because the standards used to determine whether Officer Rushton is liable for battery under the NMTCA and whether he is liable for a violation of the Fourth Amendment are different.

        a.  *Federal Excessive Force Claim*

        To establish a civil rights claim under 42 U.S.C. § 1983, a plaintiff must prove that a defendant acted under color of state law to deprive the plaintiff of a right, privilege, or immunity secured by the Constitution or the laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  In this case, Ms. Sanchez raises a Fourth Amendment excessive force claim.  Under the Fourth Amendment to the United States Constitution, a person has the right to be free from

---

[4] Section 41-4-12 provides that the immunity from tort liability enjoyed by governmental entities and public employees pursuant to subsection A of N.M. Stat. Ann. § 41-4-4 (1978) "does not apply to liability for . . . wrongful death resulting from battery . . . or any other deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties." N.M. Stat. Ann. § 41-4-12 (1978).

unreasonable searches and seizures.[5]  A person who is shot and killed by a law enforcement

officer is "seized" for the purposes of the Fourth Amendment.  *See Tennessee v. Garner*, 471

U.S. 1, 7 (1985).  To prove an excessive force claim, the plaintiff must prove that the force used

to effect a seizure was objectively unreasonable under the totality of the circumstances.  *Estate of*

*Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008).

In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court provided guidance for

determining whether an officer's use of force is reasonable under the Fourth Amendment.  *Id*. at

397.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a

reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id*. at 396.  The

inquiry must make allowances "for the fact that police officers are often forced to make split-

second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the

amount of force that is necessary in a particular situation."  *Id*. at 396–97.  Factors for

consideration are "the severity of the crime at issue, whether the suspect poses an immediate

threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest

or attempting to evade arrest by flight."  *Id.* at 396; *see also Pauly v. White*, 874 F.3d 1197 (10th

Cir. 2017) (applying *Graham*).  The subjective intent of the officer is irrelevant to the analysis.

*Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *see also McCowan v. Morales*, 945 F.3d 1276,

1283 (10th Cir. 2019) ("A Fourth Amendment excessive-force claim is governed by a purely

objective standard . . . .").

In addition, Officer Rushton has asserted a qualified immunity defense to the federal

excessive force claim.  Doc. 3 at 5.  Qualified immunity shields government officials performing

---

[5] The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. CONST. amend. IV.

discretionary functions from liability for civil damages unless their conduct violates clearly

established constitutional rights of which a reasonable person would be aware. *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982).  Under the Tenth Circuit's two-part test for evaluating

qualified immunity, the plaintiff must show (1) that the defendant's conduct violated a

constitutional right, and (2) that the law governing the conduct was clearly established when the

alleged violation occurred. *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998);

*accord Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998).  For a right to be

clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable

official would understand that what he [or she] is doing violates that right." *Anderson v.*

*Creighton*, 483 U.S. 635, 640 (1987).  Unless both prongs are satisfied, the defendant will not be

required to "engage in expensive and time consuming preparation to defend the suit on its

merits." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

       b. *State Battery Claim*

      To state a tort claim under the waiver of immunity set forth in N.M. Stat. Ann. § 41-4-12,

a plaintiff must demonstrate that the defendant is a law enforcement officer acting within the

scope of his or her duties, and that the plaintiff's injuries arose out of a tort enumerated in

Section 41-4-12. *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021,

¶ 7, 121 N.M. 646, 649, 916 P.2d 1313, 1316.  Battery is one of the torts specifically enumerated

in Section 41-4-12.[6]  Unfortunately, New Mexico has declined to adopt a uniform jury

---

[6] Section 41-4-12 states:

      The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978
      does not apply to liability for personal injury, bodily injury, wrongful death or
      property damage resulting from assault, battery, false imprisonment, false arrest,
      malicious prosecution, abuse of process, libel, slander, defamation of character,
      violation of property rights, the independent tort of negligent spoliation of

instruction on battery because there is "insufficient New Mexico law on [civil] assault and battery." UJI 13-1624 NMRA. This Court, however, has determined that "New Mexico's civil battery law is modeled after the Restatement (Second) of Torts." *Pena v. Greffet*, 108 F. Supp. 3d 1030, 1061 (D.N.M. 2015). Thus, a tortfeasor in New Mexico is liable for battery when "(a) he [or she] acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results." *State v. Ortega*, 1992-NMCA-003, ¶ 12, 113 N.M. 437, 440, 827 P.2d 152, 155 (citing Restatement (Second) of Torts § 18); *see also Fuerschbach v. Southwest Airlines Co*., 439 F.3d 1197, 1208–09 (10th Cir. 2006). The Restatement provides generally that "[a]ny bodily contact is offensive 'if it offends a reasonable sense of personal dignity.'" *See Fuerschbach*, 439 F.3d at 1209 (quoting Restatement (Second) of Torts § 19); *see also Pena*, 108 F. Supp. 3d at 1061 (noting that "[n]ormally, the severity-of-contact threshold for battery is so low as to be nearly nonexistent, requiring only a 'harmful or offensive contact.'").

The battery claim in this case has been brought against a law enforcement officer, and special privileges are afforded to officers that do not subject them to civil liability under certain circumstances. With respect to officers, the Restatement describes the limit of permissible force

---

evidence or the independent tort of intentional spoliation of evidence, failure to comply with duties established pursuant to statute or law or any other deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties. For purposes of this section, "law enforcement officer" means a public officer or employee vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of or convicted of committing a crime, whether that duty extends to all crimes or is limited to specific crimes.

N.M. Stat. Ann. § 41-4-12 (1978).

as follows: "[t]he use of force against another for the purpose of effecting the arrest or recapture

of the other, or of maintaining the actor's custody of him, is not privileged if the means

employed are in excess of those which the actor reasonably believes to be necessary." *Pena*, 108

F. Supp. 3d at 1062 (citing Restatement (Second) of Torts § 132).  The parties do not dispute that

Officer Rushton was acting as a law enforcement officer for purposes of the NMTCA.

  In *Mead v. O'Connor*, the New Mexico Supreme Court recognized that, in making an

arrest, an officer is "entitled to use such force as was reasonably necessary under all the

circumstances of the case" and that "[o]fficers, within reasonable limits, are the judges of the

force necessary to enable them to make arrests or to preserve the peace."  1959-NMSC-077, ¶ 4,

66 N.M. 170, 173, 344 P.2d 478, 479–80.  Further, "[w]hen acting in good faith, the courts will

afford them the utmost protection, and they will recognize the fact that emergencies arise when

the officer cannot be expected to exercise that cool and deliberate judgment which courts and

juries exercise afterwards upon investigations in court."  *Id*.  Thus, in determining whether a law

enforcement officer committed a battery, the jury must decide not only whether the officer's

actions were reasonable, but also whether the officer was acting in good faith.  *See St. John v.

McColley*, 653 F. Supp. 2d 1155, 1165 (D.N.M. 2009) ("Additionally, a jury must determine

whether Defendants are protected by having acted reasonably and in good faith.").

  c. *Differences Between the State Tort Claim and the Federal Excessive
    Force Claim*

  Whether a law enforcement officer is liable for his or her use of force under the Fourth

Amendment and the NMTCA both require a determination of whether the officer's actions were

objectively reasonable under the circumstances.  *See Youbyoung Park v. Gaitan*, 680 F. App'x

724, 744 (10th Cir. 2017) (agreeing with the district court's conclusion that because defendants

did not employ unconstitutionally excessive force in effectuating plaintiff's arrest, defendants

could not be liable for assault and battery under New Mexico law); *see also Pena*, 108 F. Supp. 3d at 1048 ("An 'officer can be held liable for assault and battery if he uses excessive force.'"). Thus, one issue that must be addressed in the state case—whether Officer Rushton acted reasonably under the circumstances—is similar to an issue raised in this case.  Under New Mexico state law, however, whether an officer's use of force was reasonable is a question typically left for the jury to decide.  *See Pena*, 108 F. Supp. 3d at 1061–63 (whether correction officer committed battery by pushing detainee against wall to get her attention after she refused to respond to question is issue for jury to decide); *St. John*, 653 F. Supp. 2d at 1165 (whether officer who escorted movie patron from movie theatre committed battery "is a question best left to a jury"); *State v. Ellis*, 2008-NMSC-032, ¶ 17, 144 N.M. 253, 257, 186 P.3d 245, 249 ("[G]enerally, the question of the reasonableness of the actions of the officer . . . is a question of fact for the jury.") (quoting *Alaniz v. Funk*, 1961-NMSC-140, ¶ 9, 69 N.M. 164, 167, 364 P.2d 1033, 1035).  In contrast, in cases involving federal constitutional claims, the Court decides what is objectively reasonable absent a question of material fact.  *See Mecham v. Frazier*, 500 F.3d 1200, 1203 (10th Cir. 2007) ("the question of objective reasonableness is not for the jury to decide where the facts are uncontroverted").

The state case also may require the jury to determine whether Officer Rushton acted in good faith—an issue that is not relevant to the federal case.  New Mexico courts have not clearly indicated whether a law enforcement officer's subjective intent impacts the determination of whether a civil battery occurred.  In 2005, the Tenth Circuit observed that "an officer's good faith appears to be the prerequisite for the exercise of a court's sympathetic review of an arrest: '[s]o long as officers act in good faith and use no more force than reasonably necessary to preserve the peace, they are accorded reasonable latitude in the use of force.'"  *Tanberg v.*

*Sholtis*, 401 F.3d 1151, 1168 (10th Cir. 2005) (quoting *State v. Prince*, 1999-NMCA-010, ¶ 12, 126 N.M. 547, 550, 972 P.2d 859, 862 and citing *Mead*, 1959-NMSC-077, ¶ 4, 66 N.M. 170, 173, 344 P.2d 478, 479–80).

But in 2008, in a criminal case, the New Mexico Supreme Court indicated that the determination of whether an officer used excessive force may not have a subjective component. *Ellis*, 2008-NMSC-032, ¶¶ 21–34, 144 N.M. 253, 258–61, 186 P.3d 245, 250–53.  In *Ellis*, the New Mexico Supreme Court stated that it was "informed by federal jurisprudence regarding the Fourth Amendment's protections against unreasonable searches and seizures, including the protection against excessive force (an unreasonable seizure) in the course of an arrest."  *Id*. ¶ 25, 144 N.M. at 259, 186 P.3d at 251.  The court further stated that "[a]n objective view, . . . based on a reasonable officer's opinion about the use of force, and not on the officer's subjective view, comports with our view that a well-trained police officer, within reasonable limits, is in the best position to judge the force necessary to enable them to make arrests or to preserve the peace." *Id*. at ¶ 28, 144 N.M. at 260, 186 P.3d at 252 (emphasis added, internal quotation and ellipses omitted).  Thus, whether a civil battery claim still requires the plaintiff to show that the officer was not acting in good faith is unclear.  The Court, however, need not decide this issue because there are other important differences between Ms. Sanchez's state tort claims and her federal constitutional claim.

The most important distinction between this case and the state case is that under state law, an officer is not entitled to qualified immunity.  A plaintiff alleging a state battery claim does not have to demonstrate that the constitutional right allegedly violated was clearly established.  "Whether a constitutional right was clearly established at the time an alleged violation occurred is a 'quintessential' example of a purely legal determination. . . ." *Fancher v.*

*Barrientos*, 723 F.3d 1191, 1200 (10th Cir. 2013).  Consequently, regardless of whether a state

jury finds that Officer Rushton's actions were reasonable, there are legal issues that this Court

still would need to resolve.  This alone demonstrates that the pending state case will not resolve

all the issues in the federal case, making abstention inappropriate.

Ms. Sanchez also argues that her state and federal claims are not substantially similar

because the state and federal courts address "the defense of justification in regard to a law

enforcement officer's use of deadly force differently."  Doc. 9 at 8–11.  In support of this

argument, Ms. Sanchez focuses on whether the threat to the officer was immediate or imminent

under the Fourth Amendment and argues that justifiable homicide by a police officer is more

broadly defined under state law.  *Id*. at 9–10.  Ms. Sanchez relies on N.M. Stat. Ann. § 30-2-6(B)

(1978) to support her argument.

As discussed above, an actor is subject to *civil* liability for battery if "'he [or she] acts

intending to cause a harmful or offensive contact with the person of the other or a third person,

or an imminent apprehension of such a contact, and . . . an offensive contact with the person of

the other directly or indirectly results.'"  *Ortega*, 1992-NMCA-003, ¶ 12, 113 N.M. 437, 440,

827 P.2d 152, 155 (quoting Restatement (Second) of Torts § 18).  Section 30-2-6, on the other

hand, provides a defense when a public officer or employee is being *criminally* charged with

homicide.[11]  *Murphy v. Bitsoih*, 320 F. Supp. 2d 1174, 1202 (D.N.M. 2004) (noting that § 30-2-6

---

[11] Section 30-2-6 states:

    A.  Homicide is justifiable when committed by a public officer or public
        employee or those acting by their command and in their aid and assistance:

        (1) in obedience to any judgment of a competent court;
        (2) when necessarily committed in overcoming actual resistance to the
execution of some legal process or to the discharge of any other legal duty;

"grants police officers immunity from criminal homicide charges under certain circumstances").
Section 30-2-6 gives law enforcement officers a wider scope of privilege than the general public
when using deadly force in self-defense.  *State v. Mantelli*, 2002-NMCA-033, ¶ 39, 131 N.M.
692, 700, 42 P.3d 272, 281.  But it's not clear that Section 30-2-6 would be applicable here
because this is a civil case, not a criminal one.  *See Murphy*, 320 F. Supp. 2d at 1202.  Ms.
Sanchez cites no New Mexico state case that authorizes the application of the justifiable
homicide defense contained in Section 30-2-6 to a civil case alleging the tort of battery and
wrongful death.  *See id*.  Nonetheless, this is another potential difference between the two cases
if the state court were to apply this standard.

Several other district courts also have found that state tort claims are not parallel to
federal constitutional claims, even if the claims arise out of the same events and have some legal
issues in common.  For example, in *Gentry v. Wayne County*, No. 10-cv-11714, 2010 WL
4822749, *2–4 (E.D. Mich. Nov. 22, 2010) (unpublished), the court held that plaintiff's state tort
claims arising out of an officer shooting the plaintiff while attempting to remove him from his
girlfriend's apartment were not parallel to the plaintiff's federal constitutional claims.  The
claims were based on distinct legal theories of recovery and involved different defenses and
remedies.  *See id*.  Similarly, in *Hayes v. City of Columbus*, No. 2:10 CV 0513, 2011 WL

---

(3) when necessarily committed in retaking felons who have been rescued
or who have escaped or when necessarily committed in arresting felons fleeing
from justice; or
(4) when necessarily committed in order to prevent the escape of a felon
from any place of lawful custody or confinement.

B. For the purposes of this section, homicide is necessarily committed when a
public officer or public employee has probable cause to believe he or another is
threatened with serious harm or deadly force while performing those lawful duties
described in this section. Whenever feasible, a public officer or employee should
give warning prior to using deadly force.

2174973, *2–4 (S.D. Ohio June 3, 2011) (unpublished), the court held that plaintiffs' state tort claim for wrongful death was not parallel to their federal constitutional claims even though both claims arose out of an officer shooting and killing a man who ran from the police.  In this Court, Judge M. Christina Armijo held that a plaintiff's claims under the NMTCA were not parallel to his federal constitutional claims under 42 U.S.C. § 1983, even though the claims arose out of the same set of facts.  *Rogers v. Rivera et al.*, No. 15-CV-007 MCA/SCY, Doc. 15 (D.N.M. Jan. 25, 2016).  The Court explained that plaintiff's "state and federal causes of action were created by different legislatures to remedy different wrongs, require different standards of proof, allow different measures of damages, and are subject to different defenses." *Id.* at 9.  Thus, the state and federal claims were not parallel, and the *Colorado River* doctrine did not apply.  *Id.*  I find these cases persuasive and will follow them.[12]

### C.  Conclusion

Here, the threshold issue is not met.  The claims in the state court proceeding and the federal court proceeding are not substantially similar and, therefore, abstention under *Colorado River* is not appropriate.  Because the state case and the federal case are not parallel proceedings, the Court will DENY Officer Rushton's motion to stay.

---

[12] In his reply, Officer Rushton argues that permitting the two cases to proceed will waste resources as there is a strong chance that a judgment in one court will preclude some or all of the claims in the other court.  *See* Doc. 10 at 1–2.  While the Court recognizes this is a possibility, it is not a basis for abstention under *Colorado River*.  The test for determining whether claims are parallel is much narrower than the transactional, fact-based test for claim preclusion.  *Compare Hatch v. Boulder Town Council*, 471 F.3d 1142, 1145–51 (10th Cir. 2006) (discussing the law of claim preclusion) *with Fox*, 16 F.3d at 1081–82 (discussing what makes claims "parallel"); *see also Rogers v. Rivera*, No. 1:15-cv-00007 MCA/SCY, 2017 WL 3405606, *5 (D.N.M. Mar. 28, 2017) (unpublished) (granting summary judgment based on claim preclusion after having previously denied a motion to dismiss based on the *Colorado River* abstention doctrine).

IT IS THEREFORE ORDERED that defendant Robert Rushton's Motion to Stay Parallel

Proceedings (Doc. 7) is DENIED.

Laura Fashing
United States Magistrate Judge